JONES, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*September 29 — October 14, 1890.*

*Railroads: Wilful or grossly negligent killing of horse on track: Court and jury.*

In an action against a railroad company for the wilful or grossly negligent killing of a mare which got upon the track in the night-time without the fault of the defendant, it appeared that the train which killed the mare was running from thirty to thirty-five miles an hour; that the engineer first saw some horses on or near the track, and blew the whistle, whereupon they went in every direction; that he continued to sound the whistle until he got by the horses and supposed the track was clear; that after going some distance further he suddenly saw the mare running and stumbling on the track about 150 feet ahead of the engine; that it was then too late, and he did not try, to do anything, but struck the mare while going at full speed; and that, though it was a bright moonlight night, the en-

gineer could not, from behind the headlight, see the track more than 150 feet ahead. There was also evidence that the engineer kept on sounding the whistle until he had passed some distance beyond where he first saw the horses, and that the mare had been running rapidly for some distance on the track before she was struck. *Held,* that the evidence was insufficient to support a verdict for the plaintiff.

APPEAL from the Circuit Court for *Columbia* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This action is for damages for wilfully or by gross negligence killing a very valuable black mare belonging to the plaintiff, while trespassing upon the defendant's right of way.

The material facts are undisputed and to the effect that on October 12, 1886, the mare with other horses belonging to the plaintiff was in his pasture at the eastern part of the village of Cambria, some little distance north of such right of way; that between that pasture and the right of way was a field belonging to Hughes, through whose farm the railway ran in an easterly and westerly direction; that on the evening of the day named the mare and such other horses broke through the pasture fence, and went into the field of Hughes, and from thence south, through a gate which had been left open, onto the defendant's right of way a short distance east of the depot; that from there they passed along the right of way easterly, a distance of about 200 rods, to a point near the house of a Mrs. Davis near the right of way; that between 9 and 10 o'clock that night, a wild or irregular extra train with twenty-three loaded cars and two empty cars was running on a down grade, on its way westerly from Milwaukee to Portage by way of Horicon, at the rate of from thirty to thirty-five miles an hour, and just as it turned a curve at or near Mrs. Davis' house the engineer discovered a number of horses upon, at, and

near the track; that he at once blew the whistle and the horses went in every direction; that he continued to blow the whistle until he got by the horses and supposed the track was clear; that he continued such speed until after he had passed through " Hughes' Cut," so called, 110 rods in length, and some seventy or eighty rods west of the house of Mrs. Davis; that suddenly he saw the mare running and stumbling on the track about 150 feet ahead of his engine; that it was then too late to do anything, and that he did not try to do anything, but struck her while going at full speed; that although it was a bright moonlight night, yet he could not see as well, by reason of such light, from behind his headlight, and could not see on that night more than 150 feet ahead of his engine on the track.

There was also evidence on the part of persons in the house of Mrs. Davis, and in a house on the hill a considerable distance north of there, that the whistle tooted most of the time from, at, or near the house of Mrs. Davis until the engine had passed through the Hughes' cut; that the next day tracks were found on the right of way, supposed to be those made by the mare; that they commenced some distance westerly from the house of Mrs. Davis; that the mare at first apparently walked for a distance of five or six rods; that she then apparently trotted on the track for a distance of about thirty-five rods; that she then ran on the track for a distance of about 104 rods to the place where she was found.

The court refused to direct a verdict for the defendant. The jury returned a verdict in favor of the plaintiff, and assessed his damages at $1,008.19. From the judgment entered upon that verdict, the defendant appeals.

For the appellant there was a brief signed by *John T. Fish*, attorney, and *Burton Hanson*, of counsel, and oral argument by *Mr. Hanson*.

*J. H. Rogers*, for the respondent, contended, *inter alia*,

that the evidence showed that the engineer had chased the mare over 770 yards along the track, sounding the alarm all the way but not attempting to stop the train. This was proof of gross negligence. *Berkley v. C., R. I. & P. R. Co.* 3 West. Rep. 765; *Mo. Pac. R. Co. v. Vandeventer*, 26 Neb. 222.

CASSODAY, J. It is conceded that the mare and other horses were upon the right of way without any fault or negligence of the defendant. It is moreover conceded that the defendant is not liable unless the engineer wilfully or through gross negligence ran upon the mare. The speed of the train was very rapid, but no more so than usual on that portion of the defendant's road. Of course the engineer cannot be reasonably charged with wilful misconduct or gross negligence, unless he saw, or by the exercise of slight diligence might have seen, the mare in time to have prevented the injury. The mere fact that the engine tooted more or less for the distance indicated by the plaintiff's witnesses does not tend to prove that the engineer saw the mare for the whole or any considerable portion of that distance. After having passed the other horses, the tooting may have been prompted by overcaution, or by reason of the near approach to the depot. There are no facts or circumstances in the case which authorize the inference of such gross negligence, unless it be the mere fact that the mare was capable of, and in fact was, running very rapidly, and hence must have remained within the engineer's range of vision for a greater distance than if she had been standing still or not been running so rapidly. But we are to remember that it was in the night, and that the mare was black, and hence less likely to attract attention. Besides it is undisputed that the bright moonlight prevented the engineer, stationed as he was behind the head-light, from seeing the track for more than 150 feet ahead of the engine.

He testified, in effect, that there was no time for him to do anything, and that an attempt, when so near, to stop the train, would simply have increased the danger to the train and those upon it. The train was running at the rate of thirty or thirty-five miles an hour, and it is not apparent that the engineer could, by the exercise of even great diligence, have prevented the injury. My brethren are all clearly of the opinion that the evidence is insufficient to support the verdict; and after careful consideration I have, with some hesitancy, been led to the same conclusion.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

